IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : <br> : <br> :  No. 21-cr-254 (RCL) <br> : |
| v. | : <br> : |
| FRANK SCAVO, | : <br> : |
| *Defendant.* | : <br> : |

**RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Frank Scavo, by and through his undersigned counsel, responds to the Government's sentencing memorandum (Doc. 37) as follows:

Mr. Scavo takes full responsibility for his actions. Nonetheless, we feel obligated to point out where the Government has overstated and at times mischaracterized what Mr. Scavo himself did, and what he encountered, on January 6, 2021.

**(1) Proximity Is Not Participation**

The Government argues that Mr. Scavo's proximity to others who acted unlawfully on January 6, 2021, and his entry through an open door that had previously been the site of violence, support a sentence of imprisonment rather than probation. (Doc. 37 at 3-8) We disagree. The Government assumes that Mr. Scavo "crossed through numerous barriers and barricades." *Id*. at 14. He did not. His path did not require him to cross barriers or barricades. Upon his arrival to the front steps of the U.S. Capital people were singing the National Anthem. Mr. Scavo then proceeded to meet up with individuals who accompanied him from Scranton- a pastor and two businessmen, and took a photo of all three of them. There was no turmoil. Mr. Scavo then moved to the steps of the landing in front of the three sets of double doorway entrances. While in front of the left set of doors, he took

pictures of the mulling crowd below. Again, there was no apparent turmoil in his vicinity at this time. Once he got near the door to the U.S. Capitol, Mr. Scavo– who is 5'7" – was in the middle of a scrum. He held up his cellphone to record his passage through the U.S. Capitol on video. *See*, *e.g.*, *Id*. at 8 (3 photos showing Mr. Scavo holding his cellphone aloft while walking).

The screenshots from an unrelated online YouTube video that are included in the Government's memo at pages 4 – 5 do *not* depict what Mr. Scavo personally saw and experienced when he entered the U.S. Capitol. The Government does not indicate at what time of day those screenshots depict. But the scene was different when Mr. Scavo walked through the open door. *See Id*. at 7 (screenshots showing Mr. Scavo circled in yellow – no depiction of anyone assaulting the police).

The Government further mischaracterizes Mr. Scavo's experience with the inclusion of two freeze frames from Mr. Scavo's cellphone video that purport to show him having "a partially obstructed view of a rioter grabbing the face shield of an officer." (Doc. 37 at 3) (two screenshots with blue circles). His view was not partially obstructed, it was *completely* obstructed – he did not see that assaultive conduct. Again, Mr. Scavo is 5'7" and was in the middle of a scrum. His cellphone, held aloft, captured a moment that when frozen appears to depict assaultive conduct. And to be clear, even looking at the video now at normal speed one would miss the action without it being pointed out and the video stopped. The action that is captured in the freeze frame happened quickly. The freeze frame(s) included on Page 3 of the Government's memo take place about 50 seconds into a video clip, and pass in an instant. So even if Mr. Scavo had a clear view of the incident – and he did not – he likely would not have noticed it.

A screen shot from a video of a dynamic event can be misleading, if it is offered to prove that a person observed what was happening in one particular frame of the video. A person's attention may

be focused on somewhere different than where the cellphone was pointed. But recording a chaotic event with a raised cellphone is not the same as being aware of all of the action captured on the video. Sometimes things will stand out only through careful review of the video, after the fact. Watching the video many months later, in a calm setting, and freezing on certain momentary fragments, does not reveal precisely what Mr. Scavo actually perceived at the time the video was recorded – especially given the confusion that accompanied the disorderly mass movement of people on January 6th.

What the video in question does show are several seconds of shouting by others. Then, at the 53 second mark, the crowd is surged through the doorway into the U.S. Capitol. Seconds thereafter, as can be determined from the Government photos on page 7, the crowd walked past the police officer in the knit cap, Mr. Scavo did not see him. Mr. Scavo did not see any police officers being assaulted. He is confident that he would have followed a different course if he had. His interactions with police were limited to asking directions to exit the U.S. Capitol. As agreed in the Statement of Facts, Mr. Scavo engaged in non-violent, non-destructive acts – which he has fully acknowledged and regrets. A frame-by-frame analysis of the video is better left to the Zapruder film.

### (2) Musings To Self Are Not "Significant Disruptive Conduct"

The Government also argues that a 14-day sentence of imprisonment is appropriate because Mr. Scavo purportedly engaged in "significant disruptive conduct" by documenting his 10-minute passage through the U.S. Capitol on his cellphone and making remarks while filming. (Doc at 15-17). Mr. Scavo views the remarks as intemperate and regrettable. But his video was not made for public consumption. The only time his video and remarks had a broader audience was when he voluntarily shared the video with the FBI. None of his videotaped remarks were intended to incite others. They were essentially musings to himself. Although spoken, they were more akin to an inner monologue – not unlike what one might write in a journal. We do not believe that the decision whether

to impose incarceration or probation should turn on trying dissect and interpret these audible notes to self.

## Conclusion

Wherefore, for the reasons set forth in our filings and those that may be offered at the sentencing hearing, we respectfully ask the Court to impose a sentence of probation.

Dated: November 17, 2021                                        Respectfully submitted,


/s/ Ernest D. Preate
Ernest D. Preate (*Admitted Pro Hac Vice*)
204 Wyoming Avenue, Suite C
Scranton, PA 18503
Telephone: (570) 558-5970
epreate@comcast.net

/s/ Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
Silverman, Thompson, Slutkin & White LLC
201 N. Charles Street, Suite 2600
Baltimore, MD 21201
Telephone: (410) 385-2225
ecorcoran@silvermanthompson.com

*Counsel for Defendant Frank Scavo*